Case number 20-5748 United States of America v. Keith Ruffin Arguments not to exceed 15 minutes per side. Mr. Ahn, you may proceed for the appellant. Good afternoon. Good afternoon. May it please the court. My name is Matthew Ahn and I represent Keith Ruffin, the appellant in this case. I'd like to reserve three minutes for rebuttal. Very well. Thank you. The district court committed two errors in this case when it denied Keith Ruffin compassionate release. First, it committed a legal error by improperly deferring to application note one of the Sentencing Guidelines Policy Statement, section 1B1.13. Second, it committed an abuse of discretion during its analysis of the 3553A factors by failing to use the right legal standard to determine whether Mr. Ruffin was a danger to the community and by improperly applying the factors. I'd like to start briefly with the application note. Mr. Ruffin. Can I ask a point of clarification before you dive into that? So your argument, it seems to me, is that we need not defer to application note 1A and you are not making a claim that you could actually fit within the application note 1A, the self-care provision. Is that correct? Your claim is that the district court erred because you can consider other argument is that the application note need not be deferred to. That's correct. The district court, in its order in this case, stated directly that Mr. Ruffin suffers from serious medical conditions. But the district court stated that it could not find extraordinary and compelling circumstances because it had to find that Mr. Ruffin's ability for self-care was substantially diminished in the prison setting. This is a requirement that's only found in application note 1. But 1B.1.13 was written for a version of the compassionate release statute that has since been amended. As a result, the Second Circuit has recently ruled that the policy statement and its relevant application notes are inapplicable to situations where defendants bring compassionate release motions directly. Why do you think that is? It seems to me it still applies. It just might not be as beneficial to defendants as you would like until the Sentencing Commission intervenes. I don't think that the First Step Act didn't change the substance. It just changed the process, right? It said defendants can now bring these motions before only the Bureau of Prisons could bring them. But we're not going to change any of the substantive requirements, including extraordinary circumstances, which we've delegated to the Sentencing Commission to define. So why would we interpret the First Step Act to change the substance and not just the process when its plain text just changes the process? So I think that the not to find any portion of the policy statement no longer in force. They determined that that policy statement was only applicable to motions brought by the Bureau of Prisons and that could have been brought before the First Step Act. And it found support for this both in the text of the and also in Application Note 4 to Section 1B1.13, which states that reductions under this policy statement can only be granted upon motion of the Director of the Bureau of Prisons. Well, I relied a lot on the word applicable. And applicable just means relevant or appropriate. I And I think that our argument is not that the application notes cannot be considered at all. Our argument is merely that the courts are not bound by the application. Wouldn't your argument, for instance, does your argument mean? So one of the other factors is that that this district court has to find that a defendant would not be a threat to public safety. That's the second factor under 1B1.13. But under the Second Circuit's view, that the entire policy statement is simply not applicable to defendant filed motions. Does that mean that a district court no longer need find no threat to public safety? So even if a defendant would be a threat to public safety, a district court could still release them because the policy statement is not the applicable one. Do you see what I'm saying? Yes. And I think that that is the logical conclusion of the Second Circuit's position. But because the district court must still assess the 3553A factors, many of the facts that are relevant to the 3142G analysis should still be considered by the district court in assessing a compassionate release motion. So I believe that the Second Circuit's reasoning in Brooker is sensible. It is consistent with the argument that we advanced in briefing that application note one fails to qualify for deference or respect under our Chevron or Skidmore. If the panel has any questions specifically regarding that argument, I'm happy to answer them. Otherwise, I'd like to turn with my remaining time to the question of the 3553A factors. Can I ask a transition question? The transition question is, would you concede that you have to meet both? Would you concede that even if a district court found extraordinary circumstances, the district court could still deny relief if the district court did not think it was appropriate under a discretionary balancing of the 3553A factors? Yes, I believe that's the correct reading of the statute. The district court did two things in its 3553A analysis that constitute an abuse of discretion. First, it failed to use the proper legal standard under 18 USC 3142G to determine whether Mr. Ruffin would be a danger to the community. And it also failed to apply the 3553A factors properly. So section 3142G requires a court to determine whether there are conditions of release that will reasonably assure the safety of the community. The district court quoted this language directly in its order. But despite this, the district court's assessment of the that might be imposed on Mr. Ruffin should his motion be granted. This matters because conditions of release, including home confinement, were specifically requested in Mr. Ruffin's original motion. The court was obligated to consider whether home confinement would reasonably assure the safety of the community. In this case, the district court in its order did not make any mention of conditions of release. Judges make bond determinations constantly in their criminal cases. And in those situations, the district courts virtually always make sure to state that no conditions of release would ensure the safety of the community. In this case, the district court did not even do that, despite the fact that potential conditions of release were briefed. And this is not just a matter of reciting magic words. If the district court considered the conditions of release as required, this would require the court to consider how home confinement would potentially secure the safety of the community in light of the COVID-19 pandemic. Mr. Ruffin has been incarcerated for some time, including for the entire duration of the COVID-19 pandemic. And he has not had as much freedom to social distance as we have. And he thus understands the risks of COVID-19 as viscerally, if not more than any of us. He would take to heart the requirements of home confinement, especially in light of his rehabilitation over the last 10 years. This ties directly into the second error the district court made when assessing the 3553A factors. It improperly applied the law by discounting Mr. Ruffin's current which would take into account the rehabilitative efforts Mr. Ruffin has made over time, as well as the changes and the deterioration in his medical status that have occurred. You know, on the first point, though, our case law suggests if an original sentence already takes into account a factor, a district court can rely on that factor at the sentence reduction stage. And here, the district court did rely on the rehabilitation factor as the basis for granting a below-guideline sentence from 30 years to 25. So isn't it in some respects that you're asking the district court to double count because the district court took it into account at the first step, and you're saying rehabilitation now should count again, it's reasonable to me, or at least I can see it, the argument that it's reasonable, that the district court essentially said, no, I already took rehabilitation into account when I resentenced him the first time, and that's the very reason why he got a reduction of sentence from 30 years to 25 years. Yes, I understand that argument, and I think there is some merit to that. I think our response would be that Mr. Ruffin's rehabilitative efforts over the course of the years that have followed that period of sentencing, as well as his further deterioration in his medical status since that sentencing, should be sort of taken into account by the court. And I believe that both in the 3142G factors and the analysis that the court made, and in incorporating that analysis into its 3553A analysis, the court failed to account for those conditions of release and the way in which those conditions of release would affect Mr. Ruffin and ensure the safety of the community. Those changes in Mr. Ruffin's medical status, by the way, include a painful hernia, which the district court noted that the BOP has not operated on. They had offered a surgery to Mr. Ruffin, but they required him to change his anticoagulant medication to a medication that he knows causes him to urinate blood. As a result, he has chosen instead to live with the requires the court to consider the medical care that a defendant might need. I see I'm out of time. Unless the court has any further questions, I will. Well, I guess I'm not quite sure what your argument is on the 3553 factors. I mean, the district judge said he considered all of them. He balanced them, and he said that after consideration, I find a substantial reduction in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or afford the adequate deterrents, and would not adequately protect the public from the future. And he cites 3553A2. Now, how is that an improper legal analysis? Well, I believe in so far as there were relevant 3553A factors that had changed since the last time the court had... That he did not expressly address them? That's what you say is the reversible error here? He must expressly address everything? I don't think that's what our law says. I agree. I do not believe that that's what... Okay, so what's the error? So I believe that the discussion of these 3553A factors should be read in conjunction with the legal error that the judge made with regards to how the 3142G factors should be considered, which the judge did explicitly incorporate into the 3553A analysis. Okay. All right. I think I understand. Any further questions at this time? I think you've got... Two minutes rebuttal, or three minutes rebuttal, you'll have. Judge Batchelder, any questions at this time? No, thanks. Judge Murphy? Nope. All right. Let's hear from the government. I think you're muted. May it please the court, Deborah Brenneman for the United States. Good afternoon. Thank you. The district court denied Mr. Ruffin's motion for compassionate release for three reasons, and each of those reasons provides an independent basis on which this court could affirm. We agree that the First Step Act changed something, but the thing that it changed was access to the courthouse. It invited defendants to file motions directly with the court, and through the 30-day exemption to the court, it also enabled them to obtain expedited judicial review if the BOP was not processing their paperwork quickly. So depending on your perspective, the First Step Act either gave defendants one more right or two more rights. Either way, those only involve the process by which their claims get to the court. They don't change the applicable standards, and Mr. Ruffin conceded in his opening brief, page 11, that 1B113 and the We view the First Step Act in the statutory context that Congress created it. It works along with 3582, as previously written, that says any reduction has to be consistent with the policy statements issued by the Sentencing Commission. And we read that in conjunction with 28 U.S.C. 994, in which Congress specifically delegated to the Commission the obligation to issue those policy statements. That, in our view, is the main reason why the Second Circuit got it wrong in Brooker. You agree, though, that the policy statement is now outdated because it clearly indicates at the outset in the text, it says, upon motion of the Director of the Bureau of Prisons, and then Application Note 4 says this can only apply to motions filed by the Bureau of Prisons. So what are we, what's the remedy for those which are now clearly invalid after the First Step Act? Well, we know from Stinson and other cases that a guideline or its commentary is not binding if it is inconsistent with a statute. So we suggest that the remedy is to strike the offending eight words from the beginning of 1B113. It could easily read, upon motion under 18 U.S.C. 3582. That reflects the only change that Congress made in the First Step Act, renders 1B113 fully consistent. Some of the application notes, I realize, aren't resolved quite as easily as that. But those application notes are, again, only interpreting how 1B113 works. The best argument on the other side also, I think, is with respect to Application Note 4, or excuse me, A4, is A4, or AD, the other reason. It says, it's basically a catch-all, and it says any other extraordinary circumstance that the Bureau of Prisons finds. I find that somewhat inconsistent with the statutory text because the statutory text, Congress made the decision to delegate the authority to find what extraordinary and compelling circumstances means to the Sentencing Commission. How is that, how is this application note at all consistent with that delegation? Because what it says is we're sub-delegating to the Bureau of Prisons. That strikes me as patently inconsistent with the statute because the statute says, no, it's the Sentencing Commission that should be making this decision, not the Bureau of Prisons, or the courts, because it says if the court finds extraordinary and compelling circumstances. So I wonder, like, I mean, you talked about carving out the text of the beginning, but we could also carve out the text of A1D as determined by the director of the Bureau of Prisons and just say from there, there exists any other extraordinary circumstances, and that would be the way for the catch-all that the opposing counsel is arguing for to be consistent with this policy That is one possible interpretation, and many district courts have taken that strategy. I don't think it's fully consistent with what Congress actually did in the First Step Act, though, because repeals by implication are highly disfavored, and to the extent there may be a problem with sub-delegation, for example, the remedy would be to strike that provision, not necessarily to broaden it and redefine it. There is some utility, I think, in allowing the Bureau of Prisons to identify what circumstances look extraordinary and compelling, given their unique perspective in overseeing thousands of federal inmates. Well, then Congress could have said that by delegating to the Bureau of Prisons, which it kind of did by saying that they have to be the ones to file the motion, but it said that statutory text clearly delegates to the sentencing commission, so if we're in Chevron or whatever types of deference, it's always the plain text has to control over administrative interpretation, and I just find this application note inconsistent with the delegation to the commission. And if this court finds that application note 1D is inconsistent, the remedy would be to strike that provision, not to invalidate all of 1B113 or even all of application note 1. That would leave defendant with the three traditional besties, which are specifically identified with this by the sentencing commission. Serious medical conditions that affect his ability to provide self-care within the within a correctional facility environment, his age combined with the amount of sentence he's already served, again, along with deteriorating health due to age, or extraordinary family circumstances, instances where family care is required for minor children or a spouse due to incapacitation or death of the otherwise available caregivers. Those are historically and traditionally the reasons on which compassionate release is ordinarily granted. So even if 1D were excised from the guideline, there are still ample mechanisms that affect the sentencing commission's duty under 994T to describe what is extraordinary and compelling, to include the criteria, and to provide a list of specific examples. We dispute Mr. Ruffin's suggestion that the scope of the delegation was simply to write a policy statement and not to interpret extraordinary and compelling. We think 994T makes clear that the sentencing commission was actually providing this definitional function, and that's part of the reason it's unsurprising that this happens in the application notes, because that is where the sentencing commission ordinarily defines terms that are used. These are not terms that are ambiguous, in that they have two or more clear meanings, and the intended meaning cannot be discerned. At worst, the phrase extraordinary and compelling reasons is vague, and it does not explain how extraordinary a reason must be in order to be extraordinary. Congress recognized that flaw, and that's why they delegated in the first instance to the sentencing commission. Having delegated to the sentencing commission, that imposes two requirements here that the district court found Mr. Ruffin could not satisfy. It found that he had not satisfied any extraordinary and compelling reason for release, and it also found that he had established that he would not be a danger to society. The court did review the factors listed in 3142G. Significantly, that statute, which is ordinarily involving pretrial detention, the factors weigh out a little differently in this context. When we look at the nature and circumstance of the offense, that's unchanged in the pretrial context, but the weight of the evidence at this involves four convictions, proven guilt, as found by a jury. The history and characteristics of the person, this information, the court detailed a lot of information here. Mr. Ruffin's criminal history includes prior drug offenses, prior weapons offenses. He had a criminal history category of five. He was on probation at the time he committed these offenses, which 3142G specifically flags as a factor to be considered. Although the district court may not have explicitly said that is a reason why home confinement is inappropriate, the court did say that time and time again he had been imprisoned, he had been afforded probation, and he had returned to crime. The court therefore determined that anything less than imprisonment would be insufficient to protect the public. It repeated some of that same analysis when looking at the 3553A factors. It also highlighted the amount of time remaining on the defendant's sentence. He was, again, convicted of four serious conspiracies, two drug trafficking offenses, one involving more than five kilograms of cocaine, the other involving crack cocaine, a money laundering conspiracy, and a witness tampering, witness retaliation conspiracy. These are all very serious offenses, and although the court previously gave him a reduction for his rehabilitative efforts and imposed a 300-month sentence, to date, Mr. Ruffin has served only 123 months and eight days of that sentence. He has more than 132 months remaining. He has served less than half of his sentence. We are not disputing that he has serious medical conditions. The district court found that. The district court remembered that from his 2014 re-sentencing proceeding. At that time, he was in a committed these criminal offenses, and considering the totality of the 3553A factors, the court determined that a significant sentence reduction, what he was requesting for in this case, would be inappropriate. We're not unsympathetic to the risk of COVID, but that's not an extraordinary reason, simply because it is now an ordinary risk. Every person, incarcerated or not, is facing that threat. I realize that it's more difficult for prisoners to social distance or take other precautions, but this is a risk, an unfortunate risk, but that faces everyone. By definition, that is not extraordinary. It is ordinary. The Department of Justice has nonetheless adopted a policy in which we're using that in conjunction with the CDC's guidance regarding defendants whose pre-existing medical conditions place them at risk of severe illness from COVID, and we are using that to help courts process cases in light of Application Note 1A, because even if a defendant's medical condition on its own might not be sufficiently serious, as we put in our response, if that medical condition combined with the threat of severe illness due to COVID-19, that might change the court's analysis. In this case, that would at one of the court's rationales. It does not affect the court's assessment of Mr. Ruffin's dangerousness or its determination that the 3553A factors weighed against a reduction. Can I ask you briefly just about the Second Circuit decision? What's the government's interpretation of the word applicable? If you adopt the Second Circuit's view, there's no need to engage in any type of remedy or textual elimination of the things that are no longer valid, because under the Second Circuit's view, this is still a completely valid policy statement. It's a policy statement that only applies to Bureau-filed motions, which means that there's no policy statement that applies to defendant-filed motions, which is not unusual. That's what happened from 1984 to 2006. What's the interpretation of the word applicable? In my view, this word applicable is only signaling that there is a policy statement that corresponds to this statute, and the change that the First Step Act made by allowing defendants to file directly did not change that background principle. Well, you would agree, though, that wouldn't that be, I mean, that's an easy, the government's position actually requires us to engage in some type of, this policy statement is not valid, and we have to excise some words, and you could debate what the remedy should be. But there's no doubt that you'd have to excise some, or, you know, change some words, or excise some words, or find them not applicable, or find them void effectively. Under that view, it's one benefit that I found with that view, is that it doesn't require us to do any type of invalidate this policy statement. It's just finding that the policy statement simply doesn't apply. There is some benefit to not having to worry about the remedy. Well, in this case, I don't think it makes any difference to the outcome, given the court's finding under the 3553A factors, which, again, incorporates that dangerousness analysis, whether or not 1B113 is in effect. And for that reason, it wouldn't make a difference for Mr. Ruffin. And if this court is concerned about reaching that issue, it would not need to decide that in this case. We submit that the totality of the statutory framework, the way 3582 works with 994, and what Congress actually did in the First Step Act, signaled that it was not have a functioning Sentencing Commission to implement a new policy statement. We ask you to affirm the district court's decision. Thank you. All right. Any further questions? Judge Batchelder? Judge Murphy? No, thanks. All right. Thank you. Mr. Hahn, you've got three minutes of rebuttal. Thank you. I'd just like to make a few brief points. First of all, I think that the conclusion from the principle that implicit repeal is disfavored is that the Second Circuit's interpretation would make the most sense. But if there is some excising to be done to save the policy statement, I believe that you would have to remove the language about, you know, at the—based upon motion of the Director of the Bureau of Prisons. My apologies. You would have to remove that language from each place it exists in the policy statement that includes from Application Note 1D. To the point that the Sentencing Commission was delegated to provide a definitional sort of statement, there is a difference between doing so in the text of 1B1.13 itself and the application notes. Stinson and later Havis recognized that the application notes don't go through the same processes that the guidelines provisions themselves do. And I think that that matters in this case. To the extent that, you know, those processes sort of safeguard against separation of powers concerns, that is a relevant fact for the court to consider here. Opposing counsel did also mention the regarding certain other factors under 3142G, including the level of proof that is available against the defendant. All of these cases involve defendants who have been convicted. That factor is going to become stronger in the government's favor in every case. That being said, if we are to understand that we need to reweigh the 3142G factors to determine whether compassionate release is available, those factors must be able to change to the benefit of the defendant in order for that to happen. This goes for the 3553A factors as well. I would also just like note that Mr. Ruffin, while having a criminal record, had not had a previous term of incarceration, I believe of over one year, according to the PSR. He's now served over 10 years for the instant convictions. Finally, the note about COVID being an ordinary risk, over 16,000 inmates have tested positive for COVID in the federal system. That's almost 14% of the current prison population. That would equate to almost 50 million cases nationwide of COVID. To call that a non-extraordinary risk, I think, is unavailing. Thank you. Any further questions? Judge Batchelder? Judge Murphy? All right. Thank you very much, counsel. A case will be submitted.